UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| -vs- : | No. 3: 23-CR-26-03 |
| HOWARD BELL, aka "Nitty," : | (JUDGE MANNION) |
| Defendant : | |

GOVERNMENT'S SENTENCING MEMORANDUM

The defendant, Howard Bell, is presently scheduled for sentencing before this Honorable Court on October 11, 2024, after having entered a plea of guilty to Count 1 of the Indictment, the charge of Conspiracy to Distribute and Possess with Intent to Distribute more than 400 Grams of Fentanyl, a Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). The government hereby submits this sentencing memorandum as an aid to the Court in rendering a just sentence in this matter.

Pursuant to the terms of the plea agreement in this case (Doc. 459), the parties agreed to recommend that at least 400 grams of fentanyl, but less than 1.2 kilograms of fentanyl, are attributable to the defendant for the purposes of sentencing. *Id.* at ¶12.

### The Offense:

The offense conduct is set forth in detail in the PSR. (*See* ¶¶ 10-15). This investigation began on February 18, 2021, after the drug overdose death of a twenty-eight-year-old woman in Wilkes-Barre. (¶¶ 10-12). The overdose victim was found alone in her vehicle with the engine still running. Three small blue pills – each stamped "M-30" – were found inside her vehicle. The investigation would reveal that the victim had purchased four small blue pills from a Wilkes-Barre based drug dealer and that she died after ingesting just one of the pills.

As the investigation progressed, investigators learned of a wide-ranging drug trafficking conspiracy involving the trafficking of fentanyl pills sent via mail from Arizona to Pennsylvania. The indictment presently before the Court charges a conspiracy beginning in January 2020 through the date of the indictment – February 14, 2023. Many of the defendants in this indictment were ordering large quantities of fentanyl pills from, and transmitting cash payments to, one of several fentanyl sources in Arizona. The Arizona fentanyl sources included Davon Beckford and Tyla Griffin (both charged in a separate indictment), Shane Burns and/or Burns' girlfriend, Christina Patacky-

Beghin.  Packages containing fentanyl pills were then sent to Pennsylvania from Arizona via the U.S. Postal Service.  The pills were then distributed in Northeastern Pennsylvania and elsewhere.

Howard Bell, known as "Nitty," was a close associate of co-conspirator Davon Beckford, one of the main fentanyl distributors in the case. Bell and Beckford were friends when both lived in the Wilkes-Barre area. Beckford moved to Arizona in 2020.  Thereafter, Bell moved to Arizona as well.   After a brief period, Beckford introduced Bell to Beckford's fentanyl supplier in Arizona, co-conspirator Shane Burns.  After a short while, Bell was able to obtain fentanyl pills directly from Burns, without having to go through Beckford as an intermediary.  Bell remained in Arizona and continued to use Burns as his source for fentanyl pills.

Bell sent packages containing fentanyl pills, via mail, from Arizona back to his co-conspirators in Northeastern Pennsylvania.  The pills were then distributed in the Scranton/Wilkes-Barre area by those co-conspirators.

Bell was captured on video at the post office in Phoenix, on multiple occasions, mailing packages back to Pennsylvania. Some of the

packages containing fentanyl sent by Bell were intercepted by law enforcement and Bell's fingerprints were found on at least one package.

Bell sent money for payment of the pills via "Cash App" to Beckford, Burns and/or Burns' girlfriend, Christina Patacky-Beghin, so "Cash-App" records tie him to the fentanyl-trafficking conspiracy as well.

The plea agreement indicates that Bell's role in the conspiracy involved 400 grams to 1.2 kilograms of fentanyl, a Schedule II controlled substance. The drug weight is based on the price per pill charged by Beckford or Burns, and the typical quantity of pills mailed by Beckford or Bell back to Pennsylvania.

### The Presentence Report:

The U.S. Probation Office prepared a Presentence Investigation Report (PSR) in this case. The PSR indicates that the defendant's total offense level is **27** and the criminal history category is **III,** resulting in an advisory guideline range of **87 to 108 months**. PSR ¶ 60. However, there is a mandatory minimum sentence of **120 months** which applies in this case. *Id.*

The PSR indicates that the defendant has a significant criminal history, including convictions for the following offenses:

¶ 32 <u>Disorderly Conduct (Arrested in 2002).</u>
The defendant was the driver of a vehicle stopped in Bayshore, New York. He provided a false name and false date of birth to the police.

¶33 <u>Possession of a Controlled Substance (Arrested in 2005).</u>
In February 2005, police seized cocaine base (crack) from Howard Bell following a search of his person at the Sherman Hills Apartments in Wilkes-Barre.

¶34 <u>Possession with Intent to Deliver a Controlled Substance (Heroin) (Arrested in 2006).</u>

From September 2005 to February 2006, a confidential source told investigators that he/she could purchase heroin from Howard Bell, aka "Nitty," in Luzerne County. On September 13, 2005, Howard Bell sold three packets of heroin to a confidential source, in exchange for $60, in the parking lot of a department store in Edwardsville, PA. On November 17, 2005, a confidential source purchased ten packets of heroin from Howard Bell in exchange for $180 near Division Street in Kingston, PA. The confidential source purchased heroin from Howard Bell in Luzerne County on several occasions throughout February 2006. On February 9, 2006, Howard Bell was detained following the execution of a search warrant.

The defendant entered a guilty plea on June 5, 2006, and was sentenced to 2 to 4 years in prison (to run concurrent to the charges contained in paragraph 37).

¶ 35 <u>Manufacture, Delivery, or Possession with Intent to Deliver a Controlled Substance (Arrested in 2006).</u>

According to the PSR, details are listed in ¶ 34 above.

The defendant pled guilty on June 5, 2006, and was sentenced to 2 to 4 years in prison (to run concurrent to the charges in paragraph 37).

**¶36 Possession with Intent to Deliver a Controlled Substance (Arrested in 2006).**

Details are reflected in ¶ 34 above.

The defendant pled guilty on June 5, 2006, and was sentenced to 4 years of probation to run consecutive to any other sentence.

**¶37 Possession with Intent to Deliver a Controlled Substance (Heroin) (Arrested in 2006).**

Details are reflected in ¶ 34 above.

The defendant pled guilty on June 5, 2006, and was sentenced to 2 to 4 years in prison.

**¶38 Possession of a Firearm by a Prohibited Person (Arrested in 2012)**

On June 1, 2012, police conducted a traffic stop of a Chevy Cruz near the 100 block of Wyoming Avenue in Scranton. Howard Bell was identified as the driver. Officers deployed a taser after Howard Bell failed to follow officer's directions and resisted arrest. Officers seized a firearm with an altered serial number, marijuana, and drug paraphernalia following a search of the vehicle.

The defendant was sentenced to 4 to 8 years in prison.

His parole expired in **November 2018.**

The conspiracy in the present case before the Court began in **2020.**

**The Criminal History Category here is III.**

### The Sentencing Process:

District courts engage in a familiar three-step process when sentencing criminal defendants:

> A district court must begin the process by first calculating the applicable sentencing guidelines range. After that initial calculation, the court must then rule on any motions for departure and, if a motion is granted, state how the departure affects the guidelines calculation. Finally, after allowing the parties an opportunity for argument, the court must consider all of the § 3553(a) factors and determine the appropriate sentence to impose, which may vary from the sentencing range called for by the guidelines.

*United States v. Tomko,* 562 F.3d 558, 567 (3d Cir. 2009) (en banc).

As indicated, in the PSR, the U.S. Probation Office determined that the defendant's total offense level is **27** and his criminal history category is **III,** resulting in an advisory guideline range of **87 to 108 months**. Here, however, a mandatory minimum sentence of **120 months** applies.

### The Sentencing Factors:

Under the sentencing statute, the sentence to be imposed needs to reflect the seriousness of the offense, promote respect for the law, provide for just punishment, deter others from engaging in similar

7

conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

### Fentanyl is Killing Americans at an Unprecedented Rate:

In the present matter, the defendant is responsible for the distribution, and possession with intent to distribute, between 400 grams and 1.2 kilograms of fentanyl.  The crime is serious.  As this Court is aware, fentanyl is a highly addictive and dangerous substance.  The amount for which the defendant is accountable is very significant, particularly when one considers that the use – literally – of just a few grains or specks of fentanyl can result in overdose or death.  In fact, the investigation in the present matter began with the accidental overdose death of a twenty-eight-year-old woman in Wilkes-Barre who ingested one small pill containing fentanyl.

Provisional data shows that drug overdose deaths in the United States surpassed 100,000 in 2022.[1]  Fentanyl was responsible for 73,654

---

[1] Provisional Data Shows U.S. Drug Overdose Deaths Top 100,000 in 2022 | Blogs | CDC

8

of those deaths.[2]  Fentanyl deaths have increased every year for the past decade.[3]

In April 2022, DEA administrator Anne Milgram outlined the current fentanyl overdose threat and stated: *"Fentanyl is killing Americans at an unprecedented rate."* Drug traffickers are driving addiction, and increasing their profits, by mixing fentanyl with other illicit drugs.  Tragically, many overdose victims *have no idea* they are ingesting deadly fentanyl, until it's too late."[4]  (This is precisely what happened in the present investigation.  The accidental overdose victim in Wilkes-Barre thought she was ingesting a Percocet pill.)

Here, Howard Bell, known as "Nitty," was part of a wide-spread fentanyl trafficking conspiracy that wreaked havoc in our community. The conspiracy in which he participated was responsible for distributing thousands of fentanyl pills on the streets of Northeastern Pennsylvania. He was one of the major players in that conspiracy – he obtained fentanyl pills – thousands of them – from suppliers in Arizona and

---

[2] [Are fentanyl overdose deaths rising in the US? (usafacts.org)](#)
[3] *Id.*
[4] https://www.dea.gov/press-releases/2022/04/06/dea-warns-increase-mass-overdose-events-involving-deadly-fentanyl

shipped those pills to co-conspirators in Northeastern Pennsylvania, where the pills were distributed.

Bell's prior criminal history is very troubling. He has *seven* adult convictions. *Four* involve prior drug-trafficking. One involves illegal possession of a firearm – an incident in which Bell possessed a firearm with an altered serial number, failed to follow an officer's directions, resisted arrest, and had to be tased. His parole in that matter expired in November 2018. By 2020, Howard Bell was back in the drug business – this time distributing fentanyl – a drug which has devastated our country.

Previous sentences of incarceration have failed to deter him – his drug trafficking activities escalated, and he continued to engage in drug trafficking – no matter the damage he caused to the community.

From the government's perspective, the important factors set forth in 18 U.S.C. §3553(a) which the Court must consider in imposing a sentence on this defendant include the need for the sentence to:

- reflect the seriousness of the offense,
- promote respect for the law,
- provide just punishment for the offense,

- afford adequate deterrence to criminal conduct and
- protect the public from further crimes of the defendant.

(*See* 18 U.S.C. § 3553(a)).

There is a 120-month mandatory minimum sentence which applies in this case.

The government respectfully requests that this Honorable Court impose that 120-month mandatory minimum sentence.

                        Respectfully submitted,

                        GERARD M. KARAM
                        United States Attorney

                   By: /s/ ROBERT J. O'HARA
                        ROBERT J. O'HARA
                        Assistant U.S. Attorney

Date:  October 9, 2024

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| -vs- | : | No. 3: 23-CR-26-03 |
| HOWARD BELL, aka "Nitty," | : | (JUDGE MANNION) |
| Defendant | : | |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on October 9, 2024, she served a copy of the attached:

GOVERNMENT'S SENTENCING MEMORANDUM

By ECF notice to:

    Attorney Carl J. Poveromo
    Counsel for the Defendant

                                      /s/ Stephanie Kakareka
                                      Stephanie Kakareka
                                      Legal Administrative Specialist